IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| CHAD R. STREET | ) | |
|     Plaintiff, | ) | |
| | ) | NO. 2:09-CV-266 |
| v. | ) | (MATTICE/CARTER) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
|     Defendant. | ) | |

## REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income under Title XVI of the Social Security Act.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of:

(1)    The defendant's Motion for Summary Judgment (Doc. 15)

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

### Application for Benefits

(Plaintiff) protectively applied for Supplemental Security Income (SSI) on April 12, 2007, alleging disability since September 21, 2001,[1] due to knee problems, a back impairment, a

---

[1] Plaintiff filed his SSI application at issue in this case on April 12, 2007 (Tr. 11). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. See 20 C.F.R. § 416.335.

1

weight problem, and swelling in his legs (Tr. 11, 99).  After his applications were denied initially and upon reconsideration, Plaintiff requested an administrative hearing (Tr. 11).  The administrative law judge (ALJ) held a hearing on January 8, 2009, at which Plaintiff appeared with counsel[2] and testified, along with a vocational expert (Tr. 20-36).  In a decision dated May 29, 2009, the ALJ found that Plaintiff was not disabled because he could perform a significant number of jobs in the national economy despite the limitations caused by his impairments (Tr. 11-19).  On September 25, 2009, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review (Tr. 1).  See 20 C.F.R. §§ 416.1455, 416.1481.  Under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

On July, 22, 2011, the Court entered an order allowing Plaintiff up to and including September 16, 2011, in which to file a dispositive motion (Doc. 9).  No dispositive motion was filed by Plaintiff.  On October 20, 2011, the Commissioner filed a Motion for Extension of Time to file their Motion for Summary Judgment, noting the failure of Plaintiff to file a motion and brief (Doc. 10).  The Court granted that motion (Doc. 14).  The Commissioner filed his Motion for Summary Judgment and Memorandum in Support of the motion on January 19, 2012 (Docs. 15 and 16).  On January 20, 2012, the Court entered an order specifically allowing Plaintiff to file a reply to the Commissioner's Motion and Memorandum (Doc. 17).  That order invited Plaintiff to "set out in his own words why he contends the decision of the ALJ is not supported by substantial evidence."  Plaintiff has filed no Reply and has not set out any reason why the decision of the ALJ is not supported by substantial evidence.

---

[2]  Plaintiff's proceeds before this Court in *pro se* status.

Standard of Review - Findings of ALJ

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The burden of proof in a claim for social security benefits is upon the claimant to show disability. *Barney v. Sec'y of Health & Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once the claimant makes a prima facie case that he cannot return to his former occupation, however, the burden shifts to the Commissioner to show that there is work in the national economy which claimant can perform considering his age, education, and work experience. *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to

3

administrative decision makers because it presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

As the basis of the administrative decision of May 29, 2009, that plaintiff was not disabled, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since April 12, 2007, the application date (20 CFR 416.971 *et seq*).

2. The claimant has the following severe impairments: morbid obesity, degenerative lumbar disk disease, mild depression and polysubstance addiction and abuse (20 CFR 416.921 *et seq.*).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(b).

5. The claimant has no past relevant work (20 CFR 404.965).

6. The claimant was born on August 28, 1980 and was 26 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. The claimant has no transferable skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 12, 2007, the date the application was filed (20 CFR 416.920(g)).

(Tr. 13-19).

## Issue

Plaintiff has filed no dispositive motion and therefore raises no issue. The Court will review the record to determine if there is substantial evidence to support the decision of the ALJ.

## Relevant Facts

### Vocational Evidence

Plaintiff was 26 years old when he filed his SSI application (Tr. 18). He has a high-school education and some college (Tr. 30). The ALJ asked the vocational expert at Plaintiff's January 2009 hearing whether Plaintiff could perform any jobs if he was able to perform sedentary work that allowed frequent postural changes and a sit/stand option with no repetitive bending, stooping, or squatting (Tr. 32-33). The vocational expert testified that with such limitations, Plaintiff could perform jobs as a hand packager (150 jobs regionally, 165,000 nationally); sorter (125 regionally, 135,000 nationally); assembler (160 regionally, 200,000 nationally); and inspector (175 regionally, 110,000 nationally) (Tr. 32-34).

### Medical Evidence

The medical evidence shows that Plaintiff was involved in a car accident in September 2002 that resulted in broken ribs, and back and right-knee problems (Tr. 177, 195-96, 510). In a March 20, 2003 treatment from Appalachian Orthopedic, Plaintiff complained of right knee pain and was assessed as morbidly obese (Tr. 510). Plaintiff underwent arthroscopic surgery on his right knee in May 2003; he had swelling and discomfort post-surgery, but could walk (Tr. 507).

5

Plaintiff participated in physical therapy and had injections to the knee (Tr. 187-94, 506-07). In February 2004, Plaintiff had right foot and ankle pain, and x-rays revealed a mid-foot break (Tr. 505-06). Plaintiff stopped receiving injections in February 2005, after being arrested for possession of drug paraphernalia (Tr. 185).

Soon after his arrest, in February 2005, Plaintiff underwent a mental health evaluation (Tr. 197-202). Plaintiff was diagnosed with bereavement, depression due to substance abuse/dependence, opioid dependence/abuse, and benzodiazepine dependence/abuse; his global assessment of functioning (GAF) score at the time of admission was 40, but was 70 at discharge (Tr. 197), which is indicative of "some difficulty in . . . functioning . . . but generally functioning pretty well."[3]

In April 2005, Plaintiff reported low back and right-knee pain; Percocet made his pain tolerable (Tr. 203). On examination, Plaintiff had some tenderness to palpation on the side of his right knee, but had no significant increase in pain with low-back extension or flexion; negative straight leg raising bilaterally; full range of motion without replication of pain in his ankles, knees, and hips; intact sensation; and normal reflexes and muscle strength (5/5) (Tr. 204). His psychological examination was normal (Tr. 204). Plaintiff was diagnosed with morbid

---

[3] The GAF scale reflects a "clinician's judgment" of the individual's symptom severity or level of functioning. American Psychiatric Association, <u>Diagnostic & Statistical Manual of Mental Disorders</u>, 32-33 (4th ed., Text Rev. 2000) (<u>DSM-IV-TR</u>). The higher the number, the higher the level of functioning. <u>Id.</u> A GAF score of 71-80 reflects "no more than slight impairment." <u>Id.</u> at 34. A GAF score of 61-70 reflects "some mild symptoms" or "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well." <u>Id.</u> A GAF score of 51-60 reflects "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." <u>Id.</u> A GAF score of 41-50 reflects "serious symptoms" or "any serious impairment in social, occupational, or school functioning." <u>Id.</u> A GAF score of 31-40 reflects a "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood" <u>Id.</u>

obesity, degenerative joint disease in his right knee, and chronic lumbar strain secondary to obesity (Tr. 204).

In August 2006, Plaintiff went to the emergency room for pain in his feet and legs. Other than swelling in his legs, examination findings were unremarkable, including his ability to walk normally (Tr. 275-76).

In September 2006, Plaintiff was admitted voluntarily to Indian Path Pavilion for opiate detoxification (Tr. 216). Notes indicated that Plaintiff had been hospitalized multiple times for opiate dependence, and each time demanded discharge the next day (Tr. 217). His drug screen was positive for benzodiazepines and opiates (Tr. 217). He was refused a medical discharge, but demanded to leave and was discharged against medical advice (Tr. 217).

In March 2007, Plaintiff was the passenger in a car that was rear-ended, which prompted him to go to the emergency room with complaints of back pain (Tr. 263). He had tenderness in his back, but normal muscle strength and was neurologically intact (Tr. 264). Low-back x-rays showed early degenerative disk changes at L5-S1, and anterior osteophytes at L1-L2 (Tr. 273). Plaintiff was diagnosed with lumbar strain and given medication (Tr. 264).

Plaintiff began physical therapy for low back and bilateral knee pain on April 18, 2007 (Tr. 297). Plaintiff did not show up for his appointment on April 24, 2007, and on April 26, it was noted that he needed bilateral knee replacements (Tr. 299).

A May 2007 MRI of Plaintiff's mid-back showed mild anterior wedge compression deformity of T8 through T10, resulting in angular kyphosis; associated degenerative disk and facet changes contributing to narrowing at various levels in the vertebral canal; and some cord contour abnormality (Tr. 514). A low-back MRI from the same date showed degenerative disc

7

changes with associated annular tear, biforaminal prominence of disc contours at L5-S1, and moderate neuroforaminal narrowing on the right (Tr. 513).

In July 2007, Dr. Reeta Misra reviewed the medical evidence and opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk about six hours and sit about six hours in an eight-hour workday; and occasionally perform postural movements, but should never climb ladders, ropes or scaffolds (Tr. 543-44).

Also in July 2007, Dr. Rebecca Joslin reviewed the medical evidence and opined Plaintiff did not have any severe mental impairment(s) (Tr. 529). She further opined Plaintiff was mildly restricted in his activities of daily living; maintaining social functioning; and concentration, persistence, or pace; and had no episodes of decompensation of extended duration (Tr. 539).

In October 2008, Plaintiff sought treatment at the Fibromyalgia and Fatigue Centers (Tr. 555-56). Examination findings were within normal limits except for swelling in Plaintiff's legs (Tr. 555). Numerous painful trigger points were located (Tr. 555). Plaintiff was diagnosed with fibromyalgia and chronic fatigue immune dysfunction syndrome, and his prescribed medications included Xanax for insomnia and anxiety, and Oxycontin 80mg for pain (Tr. 556).

Later in October 2008, Plaintiff saw Dr. James Shipley for complaints of fibromyalgia and chronic fatigue (Tr. 552). Dr. Shipley's examination was unremarkable and he diagnosed osteoarthrosis (not otherwise specified), unspecified site; and myalgia/myositis (not otherwise specified) (Tr. 552-53). Dr. Shipley prescribed a refill of Oxycontin 80mg, noting that Plaintiff was "stable on current dose . . . medication helps and allows functioning" (Tr. 553).

Dr. Shipley saw Plaintiff again in December 2008; Dr. Shipley's examination findings remained unremarkable, except for signs of bronchitis and elevated blood pressure (Tr. 550-51).

He maintained Plaintiff on Oxycontin 80 mg, as it stabilized his pain and helped allow functioning (Tr. 550). In a hand-written letter received by the Social Security Administration on December 15, 2008, Dr. Shipley opined that Plaintiff was "unable to work at this time due to his degenerative joint disease and fibromyalgia" (Tr. 554). Dr. Shipley provided no specific individual limitations (Tr. 554).

## Analysis

### Substantial Evidence Supports the ALJ's Finding That Plaintiff Was Not Disabled

As stated above, Plaintiff was given up to and including September 16, 2011, in which to file a dispositive motion (Doc. 9). No dispositive motion was filed by Plaintiff. After the Commissioner filed his Motion for Summary Judgment and Memorandum, the Court entered another order specifically allowing Plaintiff to file a reply to the Commissioner's Motion and Memorandum. That order invited Plaintiff to "set out in his own words why he contends the decision of the ALJ is not supported by substantial evidence." Plaintiff has filed no Reply and has not set out any reason why the decision of the ALJ is not supported by substantial evidence.

I have reviewed the record and the arguments of the Commissioner, which I conclude are supported by the record. I adopt and set forth those reasons as the basis of my conclusion that the decision of the ALJ is supported by substantial evidence. As the Commissioner notes, the ALJ found that Plaintiff was significantly limited due to his impairments, but concluded he was not disabled because he could perform sedentary work that allowed frequent postural changes and a sit/stand option with no repetitive bending, stooping, or squatting (Tr. 32-33). The medical evidence, including medical source opinions and testing, supports the ALJ's findings regarding the nature and severity of Plaintiff's limitations. The ALJ's residual functional

9

capacity finding accommodated the limitations supported by the credible evidence in the record, and this Court should accord the ALJ's assessment of the evidence appropriate deference.

The only evidence supporting Plaintiff's claim that he could not work was Dr. Shipley's hand-written letter stating that Plaintiff was "unable to work at this time due to his degenerative joint disease and fibromyalgia" (Tr. 554). However, the ALJ correctly noted that Dr. Shipley provided no specific limitations resulting from Plaintiff's impairments (Tr. 17). Dr. Shipley's opinion that Plaintiff was "unable to work" was an opinion on an issue reserved to the ALJ. See 20 C.F.R. § 416.927(e)(1); SSR 96-5p; Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). ALJs are "not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Cohen v. Sec'y of HHS, 964 F.2d 524, 528 (6th Cir. 1992)). Therefore, the ALJ was not obligated to afford Dr. Shipley's opinion "any special significance." See 20 C.F.R. § 416.927(e)(3).

As the Commissioner outlines in his Memorandum, the record medical evidence supports the ALJ's decision, as seen in the treatment notes cited in the ALJ's decision. For instance, in April 2005, Plaintiff's right knee was tender, but he had no significant increase in pain with low-back extension or flexion; negative straight leg raising bilaterally; full range of motion without replication of pain in his ankles, knees, and hips; intact sensation; and normal reflexes and muscle strength (5/5) (Tr. 204). In August 2006, he had swelling in his legs, but an otherwise normal examination, including a normal gait (Tr. 275-76). In March 2007, Plaintiff's back was tender, but he had normal muscle strength and was neurologically intact (Tr. 264). Even Dr. Shipley's examinations in October and December 2008 were unremarkable (Tr.

10

550-53).

The ALJ also noted that Plaintiff responded well to prescribed treatment (Tr. 17). In April 2005, Plaintiff said Percocet made his pain tolerable (Tr. 203). Dr. Shipley noted on the two occasions he saw Plaintiff that medication stabilized his pain and helped allow functioning (Tr. 550, 553). Therefore, I agree with the Commissioner's analysis that the ALJ had a reasonable basis for finding that Plaintiff's back and knee impairments "may reasonably be expected to limit the time he is able to stand and walk during the workday," but did not preclude sedentary work (Tr. 17). The ALJ also reasonably found that the evidence failed to support an additional limitation that would require Plaintiff to elevate his legs, as there was no evidence of deep venous thrombosis or other circulatory problems (despite Plaintiff's morbid obesity) (Tr. 17). The ALJ further noted that Plaintiff had no upper extremity limitation upon his ability to handle, feel, or finger small or large objects (Tr. 17). I conclude substantial evidence supports the ALJ's finding that Plaintiff could perform sedentary work.

Turning to Plaintiff's mental limitations, the ALJ reasonably relied on Dr. Joslin's opinion that none of Plaintiff's mental impairments were severe and he had only mild restrictions in any area of mental functioning (Tr. 17, 529, 539). No mental health professional in the record offered any restrictions more limiting than Dr. Joslin's. The ALJ also noted that Plaintiff's GAF score at discharge from the hospital in February 2005 was 70, which was consistent with mild to moderate symptoms (Tr. 15, 197). See DSM-IV-TR. Plaintiff did not regress, as psychological examination in April 2005 was normal (Tr. 204).

<u>The Vocational Expert's Testimony</u>

The ALJ's hypothetical question to the vocational expert, as discussed above, is

supported by substantial evidence from the record. Under Varley v. Sec'y of HHS, 820 F.2d 777, 779 (6th Cir. 1987), the vocational expert's response to a hypothetical question constitutes substantial evidence when the ALJ's residual functional capacity finding is supported by substantial evidence and it is accurately reflected in the hypothetical question. In this case, the ALJ's hypothetical question was even more restrictive than the residual functional capacity in his decision (Tr. 13, 32-33), thus benefitting Plaintiff. The vocational expert still testified there were 610 jobs available regionally and 610,000 nationally (Tr. 32-34). See Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 606 (6th Cir. 2009) (affirming based on 270,000 jobs in the national economy); Stewart v. Sullivan, 904 F.2d 708, No. 89-6242 (6th Cir. June 6, 1990) (125 relevant jobs in local geographic area and 400,000 jobs nationwide constituted "significant number of jobs"). This provides substantial evidence to support the ALJ's finding that Plaintiff could perform a significant number of jobs in the national economy.

Conclusion

Having carefully reviewed the administrative record and the Commissioner's brief, I conclude that there is substantial evidence in the record to support the findings of the ALJ and

12

the decision of the Commissioner denying the plaintiff's application for benefits. Accordingly, I

RECOMMEND:

(1) The defendant's motion for summary judgment (Doc. 15) be GRANTED;

(2) A judgment be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure AFFIRMING the Commissioner's decision which denied benefits to the plaintiff; and,

(3) This action be DISMISSED[4]

s/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[4]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file of objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 149, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).